UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| BLAYNE KIM LAFONTAINE and LORIANNE LAFONTAINE, husband and wife, a marital community,<br><br>Plaintiffs,<br><br>v.<br><br>MASSACHUSETTS CASUALTY COMPANY, a foreign insurer, and DISABILITY MANAGEMENT SERVICES, INC., a foreign corporation,<br><br>Defendants. | Case No. C05-5059FDB<br><br>ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |

    Plaintiff Blayne Kim LaFontaine suffered a shoulder injury when a 100-lb. carpet roll fell on it in August 1997. Plaintiff received some benefits under the policy when he submitted a claim on September 2, 1998, alleging disability from July 16, 1998 through September 1, 1998. In September 1998, Plaintiff's attending physician indicated that Plaintiff would be released to partial duties on or about October 1, 1998 and to full duties as of December 1, 1998. (Champagne Decl. Ex. E.) Massachusetts Casualty Insurance Company (MCIC) agreed to residual benefits payable at 50% of the Plaintiff's monthly indemnity through December 1, 1998. (Champagne Decl. ¶ 17.)

    Plaintiff advised in December 1998 that he may be filing another claim on the basis that he did

ORDER - 1

not believe he could return to work, but he said he would delay filing until he consulted with his doctor, which he expected to do in February 1999.  There was no follow-up in February 1999, and no further benefits were sought until July 2001.  (Champagne Decl. ¶¶ 20, 22.)  Physician notes on May 5, 1999 indicate that Plaintiff said that his shoulder was back to the way it was before his surgery, although the notes further indicate "rotator cuff injury, recurrent.  Will refer to orthopedics." (Champagne Decl. ¶ 21, Ex. F.)  The physician notes also state that with respect to the increasing difficulties with fingers in LaFontaine's right hand, "Again, will refer to orthopedics."  (*Id.*)

In July 2001, Plaintiff gave oral notice of his claim, and a letter to Defendant Disability Management Services (third-party claims manager) from John D. Morgan, who represented Plaintiff LaFontaine, dated July 27, 2001 wherein Mr. Morgan encloses a report form Dr. Guy Earle stating that LaFontaine is totally disabled and unable to continue to do the work he has been doing.  (*Id.* Ex. G, p. 1) Mr. Morgan also requested of Disability Management Services: "Kingly forward to me any forms necessary for making a claim under the policy, along with any other information or instructions you deem appropriate." (*Id.*)  Disability Management Services wrote back to Blayne LaFontaine stating, among other things:

> To ensure that you promptly receive any benefits that you are entitled to under your policy, we must gather information regarding the nature of your difficulties, their impact on your ability to work, and the amount of any resultant loss of income.  Therefore, we have enclosed a Claimant's Statement, Occupational Duties Form and Authorization to Obtain Information form.  Please fully complete the Claimant's Statement and Occupational Duties Form, providing us with the necessary information regarding your claim and your job duties.  Please also complete the Authorization to Obtain Information form to allow us to obtain additional information, if necessary.

(*Id.* Ex. G, p. 2.)  Disability Management Services (DMS) also requested that the Attending Physician's Statement be given to the doctor who had been treating Plaintiff.  *Id.*  Plaintiff was also advised that "After we review the completed forms, we may require additional information.  For example, we may conduct a telephone or in-person interview with you, have another physician

ORDER - 2

examine you, or review your income tax returns or other financial information." (*Id.*) Plaintiff was to be mindful that unnecessary delay would be avoided by prompt completion and return of the forms. (*Id.*)

Hearing nothing from Plaintiff, DMS spoke with Plaintiff on the telephone and followed up with a letter dated September 18, 2001. ( Champagne Decl. Ex. H.) In the letter, DMS reiterated the need for the information requested earlier and also requested an explanation of why the disability claim was so late following the asserted disability date of September 1998. (*Id.*) No response was received in spite of five letters having been sent between October 9, 2001 and November 20, 2001.

On December 14, 2001, Plaintiff finally submitted to DMS documents and his written statement wherein he indicated he was claiming total disability benefits from July 1998 forward as a result of the same shoulder injury for which he had previously submitted a claim. ( *Id.*, Ex. K.) From Plaintiff's submission, it appeared Plaintiff continued to work at least part time. ( *Id.* ¶ 29.) DMS's investigation of the Plaintiff revealed that Plaintiff regularly engaged in the sport of kayaking and was participating in local kayaking races. ( *Id.* ¶ 30.) Thus, it was unclear what Plaintiff's actual work duties were and to what extent the Plaintiff was capable of performing those duties. ( *Id.* ¶ 31.) On April 19, 2002, DMS then wrote to Plaintiff's counsel stating that "At this time, we are unable to determine whether benefits are payable under Mr. LaFontaine's policy for either 'Total or Residual Disability,'" and summarizing his claim file and requesting additional information. ( *Id.* Ex. L.) Hearing nothing, a follow-up request was made on May 17, 2002. ( *Id.* Ex. M.) Between May 22, 2002 and October 2004, DMS continued to communicate with Plaintiff's counsel in an attempt to obtain the needed documentation in light of the conflicting information it had received regarding the Plaintiff's work duties, on-going part-time employment, and the extent of the Plaintiff's alleged disability. ( *Id.* ¶ 34, Ex. N.)

Plaintiffs then filed this lawsuit on December 17, 2004 in Kitsap County Superior Court, and Defendant timely removed the matter to this Court based on diversity jurisdiction. (Howard Decl. ¶

ORDER - 3

7.) Plaintiffs have not made initial disclosures and has submitted no expert witness reports other than an informal email. (Howard Decl. ¶¶ 9 and 10.) Neither have Plaintiffs conducted any discovery. ( *Id.* ¶ 11.)

**SUMMARY JUDGMENT STANDARD**

Summary judgment is proper if the moving party establishes that there are no genuine issues of material fact and it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). If the moving party shows that there are no genuine issues of material fact, the non-moving party must go beyond the pleadings and designate facts showing an issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). Inferences drawn from the facts are viewed in favor of the non-moving party. *T.W. Elec. Service v. Pacific Elec. Contractors,* 809 F.2d 626, 630-31 (9th Cir. 1987).

Summary judgment is proper if a defendant shows that there is no evidence supporting an element essential to a plaintiff's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). Failure of proof as to any essential element of plaintiff's claims means that no genuine issue of material fact can exist and summary judgment is mandated. *Celotex*, 477 U.S. 317, 322-23 (1986). The nonmoving party "must do more than show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

**DISCUSSION**

Defendants argue that the LaFontaines have no claim against DMS because DMS is a disclosed agent of Massachusetts Casualty Insurance Company (MCIC). Washington follows the RESTATEMENT (SECOND) OF AGENCY § 320 (1958). *See Hopkins v. Anderson,* 7 Wash. App. 762, 766, 502 P.2d 473 (1972). Plaintiff agree that DMS should be dropped from this lawsuit. Plaintiff also agrees that there is no basis for the fraud claims. Accordingly, all claims against DMS are dismissed, and Plaintiff's claim of fraud against MCIC is also dismissed.

The remaining claims are breach of contract, bad faith, and CPA violations.

Before his injury, Blayne LaFontaine contends that he was "actively working in construction

ORDER - 4

work, doing carpentry, dry wall, carpet and flooring work and other normal activities as a construction foreman" and also that he was "operating as the head of his four-man construction crew at the time he filled out the application for insurance and noted on the application he was a 'corporate executive' (in the corporation he and his wife and formed) and that he was involved mostly in 'business administration'." LaFontaine asserts that "the surveillance videos will show the Plaintiff engaged in legitimate sporting activities, using muscles and engaging in ranges of motions which are not medically relevant to the ability to lift heavy weights and handle of power tools [sic], which were essential to his work in construction." (Plaintiffs' Memo p. 17.)

Plaintiffs contend that there are issues of fact:

(1) whether or not Plaintiffs' demand for payment is unsupported, because Defendant from July 16, 1998, when LaFontaine first applied for benefits, possessed: Dr. Guy Earle's three evaluations establishing that LaFontaine was disabled, HealthSouth's physical evaluation report, Dr. Earle's letter that the canoing/kayaking was irrelevant to Plaintiff's inability to engage in construction work, and the CPA report re LaFontaine's income going back to 1993 plus tax documents.

(2) whether Defendant violated WAC 284-30-330(4)(5)(7) & (13) re unfair claims settlement practices, which violation also constitutes unfair trade practices and a violation of the Consumer Protection Act.  Plaintiffs argue that in neither accepting not denying the claim and insisting on more information, ignoring expert reports regarding his right shoulder and right hand, failing to follow-up on the surveillance videos of the rowing activities, and asserting such irrelevant issues as late filing and misrepresentation.

(3) whether Defendant violated the Consumer Protection Act (CPA).

(4) whether LaFontaine met the definition of "total disability" for purposes of collecting benefits.  LaFontaine argues that Defendants ignored Dr. Earle's testimony at his deposition and Defendant's independent examination conducted by Dr. Green.

(5) whether Plaintiff was late in filing his claim.  LaFontaine asserts that Defendants were

ORDER - 5

well aware of Plaintiff's position through his attorney's December 8, 2001 letter stating that the claim related back to the original claim in 1998 and that Plaintiffs had only recently been apprised by competent medical authorities that the original shoulder injury and subsequent hand injury were permanent and total, insofar as his construction work was concerned.

(6) whether Defendant conducted a reasonable investigation of Plaintiff's claim and whether Defendant acted in bad faith. LaFontaine argues that Defendant's medical experts did not counter Dr. Earle's reports, and the surveillance videos, which Defendant has used as a delaying tactic, have been explained in that different muscles and ranges of motion are used from those used his construction work in lifting heavy weights and using power tools.

Plaintiff also argues that it is irrelevant how Plaintiff characterized his occupation on the insurance application: "95% business administration and 5% supervisor." Plaintiff argues that there is no evidence that he intended to deceive Defendant and that he somehow warranted that he was engaged in a sedentary occupation.

Defendant states that there is no dispute that LaFontaine has suffered an injury and there are at least questions of fact as to whether he cannot perform one or more of the substantial and material daily duties of his work. Defendant goes on to assert that LaFontaine may qualify for Residual Disability if he can show a net loss of income, but this is what LaFontaine has never been willing to cooperate with MCIC to establish. To be entitled to total disability under La Fontaine's policy, he must be substantially unable to perform all of the material duties of his work. If he is unable to perform only some of his duties, he qualifies for residual disability if he can show a loss of net income. Plaintiff's refusal to cooperate has prevented the determination of what amount, if any, of lost income he might have attributable to his residual disability.

Plaintiff LaFontaine has failed to make a sufficient showing of entitlement to total disability under the policy. Plaintiff's response regarding the rowing is simply that different muscles are used. Dr. Earle's opinion does not aid the determination of whether LaFontaine is entitled to total

ORDER - 6

disability or residual disability under the policy, and Dr. Earle agrees that he is not interpreting the policy when he gives a medical opinion.  Defendant's requests for additional information were reasonable under the circumstances.  While there may be some job duties that LaFontaine cannot perform daily, there is no evidence that LaFontaine cannot perform all of the substantial and material duties of his occupation and that that would entitle him to total disability.  Indeed, LaFontaine admits that he limited himself to administrative and supervisory tasks after 1997.

LaFontaine's allegations of failure to investigate fail.  The record is replete with Defendants' efforts to respond to LaFontaine's claim and to obtain information in order to properly determine his entitlement to benefits under the policy.  LaFontaine has not fulfilled his obligations under the policy.  For MCIC to provide residual disability there must be continuing proofs of claim to make determinations of what, if any, economic loss was sustained by the plaintiff for the period at issue because of is residual disability, and this is explained in detail in the disability rider.  (Champagne Decl. ¶ 9, Ex. B.)

LaFontaine has failed to demonstrate the elements of a Consumer Protection Act claim.  To prevail on a CPA claim, a plaintiff must show an unfair or deceptive act or practice in trade or commerce that impacts the public interest and a resulting injury.  *Indus. Indem. Co. v. Kallevig*, 114 Wash.2d 907, 920-21 (1990), and in an insurance context, a plaintiff must show actual violation of WAC 284-30-330 or did something egregious and unfair.  There is no such showing here in the context of Plaintiff's filing a late claim and in failing to provide evidence related to the substantial and material duties for his job and documenting claimed loss income.  The first claim was late, but Defendants worked with LaFontaine.  Defendants continued to work over the course of three years to obtain information in order to resolve LaFontaine's second claim.

On Plaintiff's claim that Defendants have waived timeliness or are estopped from asserting this defense, Plaintiffs have not demonstrated the elements of such a claim.  Specifically, there is no demonstration of unfair prejudice, *See Torina Fine Homes v. Mutual of Enumclaw*, 118 Wn.App. 12

ORDER - 7

(2003) nor any showing that the insurer has "voluntarily and intentionally relinquished a known right or that its conduct warrants an inference of the relinquishment of such right." *Id.* at 18.  The fact that MCIC paid on a claim does not estop it from seeking the information it needs to evaluate the subsequent claim.

It is agreed that the claims against DMS and the fraud claims be dismissed.  There are no genuine issues of material fact on the remaining claims relating to contract, bad faith, and CPA violations, and Defendant MCIC is entitled to Judgment as a matter of law.

ACCORDINGLY, IT IS ORDERED:

Defendants' Motion for Summary Judgment is GRANTED and all of Plaintiffs claims are DISMISSED.

DATED this 27th day of April 2006.

FRANKLIN D. BURGESS

UNITED STATES DISTRICT JUDGE

ORDER - 8